[Civil No. 733.   Filed March 20, 1901.]

[64 Pac. 443.]

## THE WALTER C. HADLEY COMPANY, a Corporation, et al., Defendants and Plaintiffs in Error, v. D. W. CUMMINGS et al., Plaintiffs and Defendants in Error.

1. MINES AND MINING—CONTRACT TO PURCHASE—MECHANIC'S LIEN—PURCHASER NOT AGENT OF OWNER—LEASE—REV. STATS. ARIZ. 1887, PARS. 2276, 2278, 2280, CONSTRUED—EAMAN v. BASHFORD & BURMISTER, 4 ARIZ. 199, 37 PAC. 24, DISTINGUISHED.—Paragraph 2276, *supra,* provides for a mechanic's lien on mines for any sums due for labor performed or materials furnished said mines. Paragraph 2278, *supra,* provides that all persons who furnish labor, machinery, or other material for the construction or operation of any mill or hoisting works at the request of the owner or his agent shall have a lien therefor. Paragraph 2280, *supra,* provides that the word "agent" shall be construed to include persons having charge of any mine or mining claim. Defendant company contracted for the sale of its mining claim, the contract providing that the deed should remain in escrow until all payments were made. The purchaser was to go into possession of the mine and operate it at his own expense and deposit the bullion or amalgam to the credit of the defendant company as collateral security for deferred payments. In the event of default in payment, the purchaser was to vacate the property. In accordance with the terms of such contract, the purchaser took possession of the property and employed plaintiffs to work on the same. Plaintiffs' accounts for labor were not paid, and they seek to enforce their liens against the defendants, the owners of the mine. *Held,* distinguishing *Eaman vs. Bashford & Burmister, supra,* that the purchaser was not an agent of the owners, but was at most a mere lessee, and that while the plaintiffs have a lien against the particular estate of the lessee, they have none against the property itself or against the owners' estate in said property.

ERROR from a judgment of the District Court of the Second Judicial District in and for the County of Pinal. F. M. Doan, Judge. Modified and affirmed.

The facts are stated in the opinion.

Hereford & Hazzard, for Plaintiffs in Error.

The facts show that Kuhnen's relations with the Walter C. Hadley Company were those of lessee. *Block* v. *Murray*, 12

Mont. 545, 31 Pac. 550; *Pelton* v. *Minah Cons. M. Co.*, 11 Mont. 281, 28 Pac. 310. *Steel* v. *Argentine M. Co.*, 4 Idaho, 505, 95 Am. St. Rep. 144, 42 Pac. 585, discusses and distinguishes the case of *Eaman* v. *Bashford & Burmister*, 4 Ariz. 199, 37 Pac. 24, the distinction drawn applying to the case at bar. *Gould* v. *Wise*, 18 Nev. 253, 3 Pac. 30.

Owen T. Rouse, for Defendants in Error.

STREET, C. J.—The defendants in error herein brought suit in the district court in and for Pinal County against the plaintiffs in error and one Charles F. Kuhnen, alleging that all the defendants were the owners of and in the possession of the mine, mining claim, mill, and pumping plant known as the "Mammon Mine and Mill," and that John N. Isgrig, one of the defendants, was the superintendent of said property, in full charge thereof. The Walter C. Hadley Company at all times were the owners of the Mammon mine and mill, and while such owners entered into an agreement with Charles F. Kuhnen as follows, to wit: "Know all men by these presents, that the Walter C. Hadley Company do hereby agree to accept from Charles F. Kuhnen the sum of $16,500.00 as purchase price of the Mammon mine and mill, etc., together with an undivided one-half interest in the Yellow Jacket claim: provided, that $2,900.00 now standing against the mine on the books of the Walter C. Hadley Company be also included: also, provided, the said Kuhnen protect the Walter C. Hadley Company against any claims that may be made by R. A. Heim, W. L. Morrow, John N. Isgrig, or by attorneys employed by John N. Isgrig in Kansas City in the Heim suit. The deed to be placed in escrow in the Consolidated National Bank, Tucson, Arizona, and $9,000.00 in cash to be placed in same bank at the same time to the credit of the Walter C. Hadley Company. Also $3,000.00 is to be placed to the credit of the Walter C. Hadley Company within ten days thereafter; the balance on one note for $8,250.00 to be placed to the credit of the Walter C. Hadley Company before May 1st, 1897. One half of the $16,500.00 is to be in cash; and a note for $8,250.00, with interest from date at 8 per cent per annum, payable before May 1st, 1897, is to be given for the other half. Amounts paid in cash over and above the first

$8,250.00 are to be credited on back of the note until note is paid. A note is also to be given by said Charles F. Kuhnen for $2,900.00, payable to the Walter C. Hadley Company, to cover open account against the Mammon mine on the books of the above-named company. The last-named note to be payable on or before July 1st, 1897, with interest at 8 per cent per annum. Said Kuhnen to operate the mine from the date of the first cash payment of $9,000.00 is made. The deed mentioned above shall remain the property of the Walter C. Hadley Company until the said two notes are paid in full. If on the 1st day of May, 1897, the note for $8,250.00 is still unpaid, then C. F. Kuhnen is to vacate the property, and the Walter C. Hadley Company is to have full possession of same. All bullion or amalgam is to be deposited in the Consolidated National Bank as collateral security for the amounts due on notes. Pay-roll and all expenses from January 1st, 1897, to be paid by said Chas. F. Kuhnen, and all bullion shipped since January 9th, 1897, to belong to Chas. F. Kuhnen after notes and interest are paid. The Walter C. Hadley Company reserves the right to inquire into the financial standing and worth of Chas. F. Kuhnen and his wife.'' Kuhnen went to work upon the mine, and through Isgrig, as superintendent, employed the defendants in error to work upon the mine and about the mill. Their accounts for labor became due and were unpaid, and liens were filed. It is now sought to enforce those liens, not only against the interests of Kuhnen in the mine, but as against the interests of the owners, the Walter C. Hadley Company.

The only question we are called upon to determine is whether, under the contract between the Walter C. Hadley Company and Kuhnen, the interests of the Walter C. Hadley Company in the mine and mill are subject to lien. Paragraph 2276 of the Revised Statutes of Arizona, under the chapter providing for liens for mechanics, laborers, and others, reads: ''All miners, laborers, and others who may labor, and all persons who may furnish material of any kind, designed or used in or upon any mine or mining claim, and to whom more wages are due for such labor or material, shall have a lien upon the same for such sums as are unpaid.'' Paragraph 2278 provides: ''All foundrymen, boiler-makers, and all persons who labor or furnish machinery, boilers, castings

or other material for the construction, alteration, repairs or carrying on of any mill, manufactory, or hoisting works, at the request of the owner thereof, or his agent, shall have a lien on the same for the amount due him or them therefor.'' Paragraph 2280 provides: ''The word 'agent' as used in this act shall be construed to include all contractors, subcontractors, architects, builders, and persons who have charge or control of any mine, mining claim, canal, water ditch, flume, aqueduct, reservoir, fence, bridge, mill, manufactory, hoisting works, or other property or thing upon which labor has been performed or material furnished.'' It is the settled law that, before one can be entitled to a lien for labor performed or materials furnished upon any property whatever, the labor performed or the material furnished must have been at the instance or request of the owner of the property, or some agent of his. Such agent may be either an agent in fact or in law. In the case of *Eaman* v. *Bashford & Burmister*, 4 Ariz. 199, 37 Pac. 24, this court did not depart from the rule that the employment must be made by the owner of the mine or by his agent. We only held that under the facts in that case the party who did employ the laborers must be considered, in the light of the statutes of Arizona, as the agent of the owner, and that the owner must have so understood it when the contract between himself and the lessee was entered into. The contract between the owner of the mine and the lessee contained the elements of a development contract, with an option to the lessee to purchase the mine for a specified price within a specified time. The contract itself, however, provided that Mott, the lessee, should operate the mines, and that the owner was to receive the net proceeds of the operation. Everything was to be done in the name of the owner. The bullion was to be shipped in his name, the returns were to be received by him, and he was to apply the proceeds in the discharge of the expenses of mining and milling the ores; and the only interest that Mott had in the operation of the mines was to satisfy himself as to whether he wanted to purchase them or not. If he purchased the mines, the money he turned over to the owner from the operation of the mines should go upon the purchase price. If he did not take the mines, the net proceeds were to remain with the owner. This

court said on that point: "A large portion of the supplies were furnished to Mott during the period when appellant was to take all the net proceeds. It seems just that his property be held for the payment of these supplies, especially when it was stipulated that the ore should first pay the cost of its extraction and reduction." Let us now look at the contract between the Walter C. Hadley Company and Kuhnen, and see if we find any such element. The first portion of the contract provides only for the sale of the mines by the Walter C. Hadley Company to Kuhnen for particular sums of money designated. The only provision about the operation of the mine contained in that contract is: "Said Kuhnen to operate the mine from the date of first cash payment of $9,000 is made. . . . If on the first day of May, 1897, the note of $8,250 is unpaid, then C. F. Kuhnen is to vacate the property, and the Walter C. Hadley Company is to have full possession of the same. All bullion or amalgam is to be deposited in the Consolidated National Bank as collateral security for the amount due on notes. Pay-roll and all expenses from January 1, 1897, to be paid by said Charles F. Kuhnen; and all bullion shipped since January 9, 1897, belongs to the said Charles F. Kuhnen, after notes and interest are paid." It would be impossible for any reasonable mind to understand that the owners, the Walter C. Hadley Company, had any interest in the working of the mines by Kuhnen. At most, he could be but a lessee; and we have already said, in the case of *Gates* v. *Fredericks*, 5 Ariz. 343, 52 Pac. 1118: "There is no statute, nor is there any principle which can be called into requisition, which makes the leaseholder the agent of the lessor. Parties furnishing material or doing labor for the leaseholder undoubtedly may have a lien against the particular estate of the leaseholder; but to hold the owner of the property responsible, and his estate in the property responsible, would be to put the landlord at the mercy of the tenant."

We think the district court erred in its judgment in making the Walter C. Hadley Company liable, and their interests in the Mammon mine and mill responsible for plaintiffs' labor accounts, and the subject of lien therefor. The judgment of the district court is modified to the extent that the interest of the Walter C. Hadley Company in the Mammon mine and

mill be not subject to liens of the defendants in error, and that no personal judgment be rendered against them.

Sloan, J., and Davis, J., concur.