[Civil No. 754.  Filed June 1, 1901.]

[65 Pac. 147.]

N. L. GRIFFIN, Defendant and Appellant, v. J. C. HURLEY, Plaintiff and Appellee.

1. MINES AND MINING—LESSOR AND LESSEE—MECHANIC'S LIEN—INTEREST SUBJECT TO—REV. STATS. ARIZ. 1887, PAR. 2276, CITED—GATES v. FREDERICKS, 5 ARIZ. 343, 52 PAC. 1118—EAMAN v. BASHFORD & BURMISTER, 4 ARIZ. 199, 37 PAC. 24, AND HADLEY CO. v. CUMMINGS, ANTE, P. 258, 64 PAC. 443, APPROVED.—Under the statute,

*supra,* providing that all miners, laborers, and others who may labor, and all persons who may furnish material of any kind, designed or used in or upon any mine or mining claim, and to whom wages are due for such labor or materials, shall have a lien upon the same for such sums as are unpaid, a miner, employed under a contract with the lessee of a mining claim, cannot foreclose a mechanic's lien upon the claim as against the owner, though' entitled to subject the lessee's interest thereto.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. R. E. Sloan, Judge. Reversed.

The facts are stated in the opinion.

Herndon & Norris, for Appellant.

J. C. Forrest, for Appellee.

STREET, C. J.—J. C. Hurley brought suit in the district court of Yavapai County against J. E. Harper and N. L. Griffin to recover the sum of $740.95 upon four separate causes of action—the first cause of action for wages in the sum of $292 for work done by him on the Hidden Treasure Mine; the second, for wages due Ben Herr, in the sum of $180; the third, for wages due Joseph Hull, in the sum of $185; and the fourth, for money due Stukey Brothers, in the sum of $55.50, for materials furnished to be used in and upon the Hidden Treasure Mine,—which accounts were assigned to Hurley. He alleged that the work was done and the material furnished on the Hidden Treasure Mine, and that the defendants, Harper and Griffin, were the owners and reputed owners and in the actual possession thereof; that mechanics' liens had been filed to cover each of said accounts, and those filed by Herr, Hull, and Stukey Brothers had been assigned to him for a valuable consideration; and he asked that the liens be foreclosed and the property sold to satisfy the liens. Defendant Harper did not make an appearance, nor answer the compaint. The defendant Griffin made answer, denying each and every material allegation. The cause was tried to the court without a jury, and the court made its findings of fact, in effect, as follows: That the said defendant N. L. Griffin was on the sixth day of December, 1899, and long prior

thereto, and now is, the owner and reputed owner of the Hidden Treasure mining claim; that plaintiff, under a verbal contract and agreement with defendant J. E. Harper, performed work and labor as a miner in and upon said mine from the sixth day of December, 1899, to the seventeenth day of February, 1900, both inclusive, and that said defendant J. E. Harper is indebted to the plaintiff therefor in the sum of $262, and that said defendant J. E. Harper was on the seventeenth day of February, 1900, indebted to the persons hereinafter named, upon a verbal contract, for work and labor done and performed as miners for the said defendant in and upon said mine, to wit: To Ben Herr, from the seventh day of December, 1899, to the seventeenth day of February, 1900, both inclusive, in the sum of $180; to Joseph Hull, from the seventh day of December, 1899, to the seventeenth day of February, 1900, both inclusive, in the sum of $185; that said defendant J. E. Harper at the time said labor and services were performed as aforesaid was in the possession and control of said mining property, under and by virtue of a lease and bond executed by the said defendant N. L. Griffin to the said J. E. Harper, and that said J. C. Hurley, at the time of performing the labor and services for J. E. Harper as aforesaid, knew that said mining property was being operated under a lease and bond from the owner of said mining property, N. L. Griffin, but had no knowledge of the particular terms and conditions of said lease and bond; that each of the above-named persons (Ben Herr and Joseph Hull), for a valuable consideration, on the nineteenth day of February, 1900, assigned his claim against the said defendant J. E. Harper to this plaintiff, which said claims, together with the amount due plaintiff for his said services as aforesaid, aggregate the sum of $627. The court further found in favor of plaintiff as to filing mechanics' liens to cover said amount, and the bringing of the action in the manner and within the time prescribed by statute. The court made its conclusions of law and judgment as follows, to wit: "That said defendant J. E. Harper is indebted to plaintiff in the sum of $654.47, with interest thereon at the rate of seven per cent per annum from the date hereof until paid, and that plaintiff is entitled to a lien upon said property therefor. Second. That plaintiff is entitled to a decree foreclosing his said lien, as prayed for

in his said complaint, upon the property hereinbefore described, to satisfy the sum of $654.47 and the costs of this suit. Wherefore, by reason of the law and the evidence aforesaid, it is ordered, adjudged, and decreed that the said lien, as it existed on the said 7th day of December, 1899, upon the following property, to wit: The Hidden Treasure mining claim, situate in the Walker Mining District, county of Yavapai, territory of Arizona, the notice of location whereof is of record in book 19 of Mines, page 383, records of said Yavapai County, Arizona Territory,—be, and the same is hereby, foreclosed, and that the clerk of said court do issue an order of sale directed to the sheriff of Yavapai County, Arizona, directing and commanding him to seize and sell the above-described property and premises, as under execution, or so much thereof as may be necessary to satisfy this judgment, interest, and costs, and that he apply the proceeds thereof to the payment and satisfaction of the said sum of $654.47, together with interest thereon from the date hereof at the rate of seven per cent per annum until paid, and the costs of this suit, taxed at the sum of $28.75, together with all accruing costs. And, if the said property should sell for more than sufficient to pay said sum, then the said officer is hereby directed to pay over the excess to the said defendant N. L. Griffin. Done in open court this 13th day of October, 1900.''

The question for this court to determine is whether the conclusions of law and judgment are supported by the findings. Both the defendants, Harper and Griffin, were alleged to be the owners of the property and in possession thereof. The findings of the court in reference to that allegation are that, at the time the labor was performed by the plaintiff and his assignors, Griffin was the owner of the property and Harper was in possession thereof by virtue of a lease, and that Harper was indebted to the plaintiff and his assignors under a contract with him alone, while the conclusion of law is that plaintiff is entitled to a decree foreclosing his mechanic's lien upon the property described to satisfy the amount due by Harper to the plaintiff and his assignors. The judgment is in accordance therewith. The conclusions of law and judgment are broad enough to subject Griffin's interest in the mine to the payment of the debt which Harper owed, and to foreclose a lien which might have been good against Harper's

interest, and sell the interest of Griffin to satisfy the same.
We regard it as well settled that those owning debts con-
tracted by lessees or others having an appreciable interest in
lands, which have arisen in regard to the lands, may file a
lien to protect the payment of such debt against the interest
which said lessees or others having an appreciable interest in
the land may have therein; but although a mechanic's lien
may reach such interest, it cannot reach the interest of the
owner of the fee, unless he is directly or by agency connected
with the debt. Phillips on Mechanics' Liens, secs. 83 et seq.,
191, 192. Our own supreme court, in the case of *Gates* v.
*Fredericks,* 5 Ariz. 343, 52 Pac. 1118, has said: "Parties fur-
nishing material or doing labor for a leaseholder undoubtedly
may have a lien against the particular estate of the lease-
holder; but to hold the owner of the property responsible,
and his estate in the property responsible, would be to put the
landlord at the mercy of the tenant. Under such circum-
stances, the tenant could make any kind of improvements at
the expense of the property." It is quite common in Ari-
zona for owners of mines or mining claims who are not able
to work and develop the mines themselves to lease their min-
ing property to some one who is willing and able to work and
develop it, which process comes within the common appella-
tion of "chloriding"; and in many parts of the territory
chloriding is a settled industry, furnishing employment and
profit to thousands of miners. Such chloriding contracts or
leases have not in view either the improvement of the mine
or its depletion, but only the operation of the mine for im-
mediate profits, the same as the owner of a farm may lease his
land to be cultivated, the lessee paying therefor as rent either
money or a portion of the products. In such operation a mine
may be improved,—it may be developed into a bonanza,—or
it may be worked out and depleted. To hold that one who
has leased a mine and takes the bulk of the proceeds, paying
the owner of the mine but a share of the profits as rental,
can so operate the mine that the miners working for him can
file liens against any other interest in the mine than that
which the lessee holds, would be destructive of the owner's
rights. No such right is given by the statute. Paragraph
2276 of the Revised Statutes of Arizona, permitting miners
to file liens, is as follows: "All miners, laborers, and others

who may labor, and all persons who may furnish material of any kind, designed or used in or upon any mine or mining claim, and to whom wages are due for such labor or material, shall have a lien upon the same for such sums as are unpaid." It may sometimes be the case that he who is called a "lessee" becomes an agent, and the instrument between the owner and the so-called lessee, although denominated a "lease," is in fact an operating contract for the benefit of the owner of the mine, in its development, in which case the so-called lessee may be declared to be the agent of the owner of the mine, as in *Eaman* v. *Bashford & Burmister,* 4 Ariz. 199, 37 Pac. 24; but as we said in the case of *Hadley Co.* v. *Cummings, ante,* p. 258, 64 Pac. 443, "It is the settled law that, before one can be entitled to a lien for labor performed or material furnished upon any property whatever, the labor performed or the material furnished must have been at the instance or request of the owner of the property, or some agent of his. Such agent may be either an agent in fact or in law."

The district court having found that Griffin was the owner of the mine, and Harper in possession only as a lessee, the judgment which was in effect that Hurley have foreclosure of liens and sale of Griffin's interest to satisfy Harper's debt, when Griffin had not in any way contracted the debt, was error. The judgment of the district court is reversed, and, without further trial, is modified so that Griffin is dismissed from the complaint, and his interest in the Hidden Treasure Mine released from the foreclosure proceedings.

Doan, J., and Davis, J., concur.